WASHINGTON,     STATE *vs.* JOHN DOWNER and ARCHIPPUS FULLER.
March,
1836.
       If an officer attach personal property in good faith, which in fact did not be-
long to the person on whose debt he made the attachment, still it is not law-
ful for the owner of the property even, to resist the attachment,but he must
resort to his action at law.

In an indictment against one for impeding an officer in serving civil process,
the allegations must show the nature of the process, the manner it was at-
tempted to be served, and the particular mode of resistance.

An indictment for an assault and battery of an officer in the execution of his of-
fice, as at common law, is good without setting forth the process or the man-
ner of resistance, and may be sustained, notwithstanding the higher penalty
superadded to the offence by the statute.

This was an indictment against the respondents for resisting an
officer in the execution of his office.  Plea—*not guilty.*  The fol-
lowing is the bill of exceptions allowed in this case :

On the trial of the issue, testimony was offered on the part of
the government, tending to show that said Churchill, being consta-
ble of Stowe, as described in the indictment, and having in his
hands certain writs of attachment in favor of certain creditors of
one Myron Fuller, who had then lately absconded, against said
Fuller.  The processes were conceded to have been regular and

legal. For the prosecution, testimony was also given tending to show, that said constable, on or about the day named in the indictment, at said Stowe, having made attachment of certain personal property of said Myron Fuller on said writs, and having the possession and control of said property by virtue of said attachments, the defendants came forcibly upon the plaintiff, and resisted him in the manner set forth in the indictment, by assaulting, beating, &c.

The defendants offered testimony tending to show, that they acted as assistants to one Thomas J. Raymond and others, who were legally authorized to serve certain writs of attachment in favor of this defendant, Downer, against said Myron Fuller; and that said Thomas J. Raymond, on said writs, which were conceded, had made a previous attachment of the same property; and that what they did, was done in defence of possession acquired by virtue of this previous attachment.

The defendants offered also to give in evidence to the jury, testimony tending to show, that previous to the attachment by said Churchill, the said Myron Fuller had conveyed this property to Downer, and that Churchill had notice of this transfer, and that what they did, was done in defence of his property so acquired, and that the debtor, Myron Fuller, had no attachable interest in the property—not pretending that the testimony would have any tendency to convince the jury that the said Churchill had no grounds of believing that Myron Fuller had any attachable interest in the property, or that he acted in bad faith in attempting the attachment.

The court decided that unless the testimony was offered to make out one of the two latter propositions, it could not avail the defendant in justifying them in forcibly resisting the officer, and rejected the testimony.

The case was submitted to the jury under instructions from the court, to which the defendants do not wish to have exceptions.—— The jury returned a verdict of *guilty* against both defendants.

After verdict and before judgment, the defendants moved the court to arrest judgment thereon, for the insufficiency of the indictment.

The court overruled the motion; but in consideration of the importance of the foregoing questions, have allowed the defendants this bill of exceptions to said decisions, and have ordered the case to pass to the supreme court for their final determination thereon.

The indictment was as follows:

WASHINGTON,
*March,*
1836.
───────
State
*vs*
Downer et al.

" The Grand Jurors, &c., present that John B. Downer, &c., and one Archippus Fuller, &c., on the 28th day of September, A. D. 1835, with force and arms, &c., in and upon one Stillman Churchill in the peace then and there being, and then being Constable of Stowe, in the County of Washington aforesaid, and in the due execution of his said office, then and there being, did make an assault, and him the said Stillman Churchill, so being in the due execution of his said office as aforesaid, then and there did hinder and impede, and then and there beat, wound, and ill-treat, and other wrongs to the said Stillman Churchill, then and there did, to the great damage of the said Stillman Churchill, and against the peace.

And the Jurors aforesaid, upon their oaths aforesaid, do further present, that the said John B. Downer and the said Archippus Fuller, on the day and year last aforesaid, at Stowe, in the County of Washington aforesaid, with force and arms at said Stowe, in and upon one Stillman Churchill, in the peace then and there being; and the said Churchill then being Constable of Stowe in the County aforesaid, and having in his hands certain writs of attachment to serve and return according to law, and then and there being in the due execution of his said office of Constable as aforesaid, then and there did make an assault on him the said Stillman Churchill, &c., then and there did impede and hinder, and then and there did beat, wound and ill-treat, and other wrongs to the said Stillman Churchill then and there did, contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the State."

*Upham for respondents.*—There are two questions in this case— The first arises upon a bill of exceptions, and the second upon a motion in arrest ; and

1st,  As to the bill of exceptions. The defendants, in the court below, offered to prove that the property which Churchill, the officer, attempted to attach as the property of Myron Fuller, was the property of one of the defendants, viz., John B. Downer, and on his farm, and that it was not liable to attachment as the property of Myron Fuller, and that the defendants used no more force upon the said Churchill than was necessary to prevent his taking away the property. This evidence was objected to by the counsel for the State, and excluded by the court. In this decision of the county court, we insist there was error.

It is a principle as old as the law itself, that a man may apply force to force, in defence of his person or property. If the property in question was the property of Downer, and on his farm, and not liable to attachment by Myron Fuller's creditors, Downer had a legal right to use all the force which was necessary to prevent Churchill's taking it away.

WASHINGTON,
March,
1836.
State
vs.
Downer et al.

We have indeed fallen in evil times if we are not at liberty to to defend our property from invasion, from whatever quarter it may come. Sheriffs and constables, like other trespassers, may be resisted unto blood, if necessary, for the protection of person or property.—2 Chit. Crim. Law, 70—*The King* vs. *Osmer*, 5 East's Rep. 304—3 Black. Com. 4.

2d, As to the motion in arrest. An indictment for impeding an officer in the execution of process, should state the process fully and at large.—See Precedents, 2 Chit. Crim. Law, 68 and 75.

In order to make it illegal to hinder and impede an officer in securing a party whom he attempts to arrest, it is necessary that the arrest itself should be lawful, and this must appear from the *indictment* itself. For if it be otherwise, even a forcible resistance may be defended, as any one may interfere to prevent an illegal caption of person or property.—2 Chit. Crim. Law, 70, n.—5 East's Rep. 308.

The indictment must also show for what cause, and on what proceeding, and by what officer the defendant was about to be arrested.—Stark. Crim. Plea. 463—1 Russell on Crimes, 384, n. n. —8 Mad. R. 357—2 Swift's Dig. 325, 708, 710, 384, 385.

Again : The indictment should allege that the officer hindered and impeded, was acting under the authority of this state.—See Stat. 266, sec. 5: and also that the defendants knew the officer was in the execution of his office.

If we test the indictment in this case by the rules above laid down, we shall find it substantially defective.

In 1832, in this county, in the case of *State* vs. *The Knapps*, Judge Royce held an indictment like the one in question bad, and arrested the judgment.

*A. Spalding, State's Attorney.—First.*—Is the indictment sufficient ?

Sec. 5, Chap. 32, of the Comp. Laws, p. 266, enacts, " That " if any person or persons shall impede or hinder any officer, judi- " cial or executive, civil or military, under the authority of this " state, in the execution of his office, such person or persons, on " conviction thereof, shall pay a fine not exceeding five hundred " dollars each," &c.

The first count in this indictment is precisely according to the most approved forms.—See Chit. Crim. Law, 2 vol. part 2.— Archbald's Crim. Pl. 250—1 Vt. Rep. 331—2 Tyler's R. 212.

The indictment is good for a common assault and battery.—5 East. 304—3 Vt. R. 110.

Washington,
March,
1836.
State
vs.
Downer et al.

*Second.*—Was the evidence offered improperly rejected? It is contended not. The defendants did not pretend that the evidence would have any tendency to convince the jury that Churchill had no grounds for believing that Myron Fuller had any attachable interest in the property, or that he had acted in bad faith in attempting the attachment.

It is the policy of the law to protect officers. Where there are various claimants to property, the right should be peaceably settled in a court of law. The officer should be protected where he acts in good faith, and has reasonable grounds for supposing that the property belongs to the debtor.

Should the court adopt a different rule, it would inevitably tend to encourage breaches of the peace.

A private individual may retake his property where it is wrongfully taken from him, provided he can do it in a peaceable manner.—3 Black. Com. 4.

The opinion of the court was delivered by

Redfield, J.—We think the testimony offered by the defendants was properly rejected by the county court. It is well settled that one may defend the possession of his property against a stranger with such force as may be necessary. But this right cannot be extended to the case of an officer whose duty it is to attach property whenever he is requested so to do. He may or may not require indemnity for the act. But it would be too much to say that he must decide all cases of doubtful property at his own hazard, or that if he attempted to make an attachment when the property was not in fact in the debtor, he might by the owner of the property be resisted to any extremity. The rule would be the same when he called out the *posse comitatus*, and the question whether the officers of justice, or the rioters, shall be held liable to indictment, must depend upon the decision of some abstract question of property, which the sagacity of no man was sufficient to foresee. And if the owner of property may resist an officer in its defence, so may one who believes himself the owner ; for it will not do to predicate crime upon so subtle a distinction as an abstract right of property. It must be something more tangible.

We believe the better and safer and only practicable rule to be, that whenever the question of property is so far doubtful that the creditor and officer may be supposed to act in good faith in making the attachment, the owner of the property even cannot justify resistance, but must yield the possession and resort to his remedy by

WASHINGTON,
March,
1836.

State
vs.
Downer et al.

action. This is the only mode in which the question could be tried. And unless such a rule be adopted, no human sagacity is adequate to the decision of those nice questions which the duty of sheriffs and their officers involve.

The rule here established does not impugn that which is found in the books, "that an illegal arrest may be resisted." If the process is void, or is misapplied, it is the same as if there were no process, so far as one's person is concerned. But the case of property is very different. It depends upon *criteria*, which are not the objects of sense.

It is well settled that if an officer have probable cause to suspect one of felony, he may proceed to arrest him by any force necessary, and is justified, notwithstanding the person shall prove to have been innocent.—2 Hale, 79—1 East. 301—*Samuel* vs. *Paine*, Douglass 357.—1 Russell on C. 504.

The question of the sufficiency of the indictment is all that remains. If either count in the indictment be good, the motion in arrest cannot prevail. The second count in the indictment, which goes upon the statute, is manifestly defective. The process should have been so far set forth, that the court could see that it was legal, and that the officer had authority to serve it. All the authorities, too, cocur in requiring that the bill should contain an allegation of the particular mode of resisting the officer. And no doubt the mode in which the process was attempted to be executed, should be specifically set forth. And it should be alleged that the respondents knew of the character in which the officer claimed to act.— For all these reasons, the second count in the bill is bad.

The first count is for an assault upon the officer in the execution of his office. This does not conclude against the statute, and is strictly for an aggravated assault at common law. And it is too well settled to be discussed, that an assault and resisting one in the execution of any authority or power, is indictable at common law, and all the precedents of indictments for such offence are like the present. We think this count good as for an offence at common law. And as the statute has only superadded the higher penalty for the offence, this does not take away the right to proceed against the offender for the offence, as at common law, which can only be punished with fine and imprisonment in the common jail.—Doug. 445—2 Ch. C. L. 70—1 Russell, 48—2 Hawkins, 625, § 4. —1 Saund. R. 135, a (4)—*King* vs. *Dickinson*, 2 Salk. 46.

This count is in strict conformity with the precedents found in

the English books.—2 Chit, 596, and cases cited.—Archbald's Pl. and Ev. 302.

The judgment of this court is, that respondents take nothing by their motion or exceptions, and judgment was rendered against the respondents.