RICHARDS *vs.* GILMORE.

The command, in writs of execution, requiring the officer " to attach the goods or estate of the debtor, if any may be found within his precinct, and for want thereof to take the body ; also to make due return of the execution," is imperative, and binds the officer to the exercise of due care, diligence and fidelity in fulfilling these requirements of the precept.

In cases, however, where the proper service of such precept is a matter of doubt and difficulty, or where there are conflicting titles to property, supposed to be the debtor's, the officer can place the risk and responsibility upon the creditor, by requiring specific directions from him as to the mode and manner of the service, and sufficient indemnity to hold the officer harmless.

Where real estate had been attached and returned on mesne process, without mention of incumbrance on the same, and, on judgment recovered, execution was delivered to an officer, for service and levy on the property, and the officer levied on a mere equity of redemption, where the debtor owned part of the estate in fee—*Held*, that the officer was liable in damage for any loss sustained thereby by the creditor, unless he could show affirmatively that there was no want of due care and diligence on his part.

In estimating the damage in such case, the actual value of the execution, or any amount received on the execution by the creditor, is to be allowed the officer in reduction of any claim for damage.

Where the creditor had, on some compromise with the debtor, discharged the execution, except so far as he might have a claim on the officer—*Held*, that this did not prevent recovery against the officer for the damage incurred, deducting from the claim against him the actual value of the execution, or any amount received thereon.

CASE against the sheriff of the county of Sullivan, for the neglect of his deputy, Jeremiah Newell.

It appeared in evidence, that on the 12th August, 1836,

the plaintiff, having a demand against Rufus Durkee and Ruel Durkee, sued out a writ thereon, and delivered it to Newell for service—That he on the same day attached, as the property of the Durkees, a tract of land in Croydon, bounded west and north by a highway, east by land of Samuel Blanchard and the Emery place, and south by land of John Lovering, commonly called the Pine Hill pasture. The writ was duly returned and entered, and judgment rendered for the plaintiff, April term, 1837, for $1062·00 damages, and $10·26 costs.

Execution issued April 24, 1837; and on that day, or within one or two days thereafter, was delivered to Newell, with directions to levy the same on the property attached, and on any other estate to be found.

The directions accompanying the delivery of the writ of mesne process to Newell did not appear, nor was there any reference in the attachment on the writ to any mortgage upon the real estate. But the larger part of the real estate was in fact under mortgage at the time of the attachment.

The said Newell was informed, soon after making the attachment, that a portion of this land was unincumbered, and free from mortgage, and the particular part was stated to him by Ruel Durkee.

On the 17th May, 1837, Newell levied the execution on the real estate, as though the whole was mortgaged, advertising it by the same description that is given in the attachment, adding that it was subject to a mortgage for a certain amount ; and after one adjournment, the equity of redemption was sold on said execution, to the plaintiff, June 23, 1837.

No other levy than the above having been made on that part of the land not mortgaged, the attachment on the same had consequently expired, and on the 22d June, 1837, Ruel Durkee, who owned that parcel of land in severalty, sold and conveyed the same to one Samuel Blanchard, and the deed was recorded on the same day.

It did not appear that the plaintiff knew that any part of the land originally attached was free from mortgage, until after the execution and record of said deed.

On the 21st May, 1838, the plaintiff executed to said Durkees a written discharge of said judgment, as follows, viz. :

" Newport, May 21, 1838. Received of Rufus Durkee and Ruel Durkee, three hundred dollars; in consideration of which I hereby release and forever discharge the said Rufus and Ruel from a certain judgment rendered in my name by the court of common pleas, in and for Sullivan county, at the April term, 1837, for the sum of $1062·00 debt or damage, and $10·26 cost of suit, on which judgment and execution was issued April 24, 1837, saving and reserving all right of action which I may have against the sheriff of said county of Sullivan, his deputy, or their respective bondsmen, by reason of any misfeasance, nonfeasance, or malfeasance, in serving the original writ in the action on which said judgment was rendered or the execution issued thereon ; and in consideration aforesaid I promise the said Rufus and Ruel to indemnify them from any further claim or damage by reason of said judgment and execution.

Seth Richards."

The execution was not returned till long after its return day.

Upon this case, a verdict was taken for the plaintiff for the value of said tract of land, subject to the opinion of this court. Judgment to be rendered thereon, or to be set aside or amended, as the court may order.

*Forsaith*, (with whom was *Hubbard*) for the defendant, contended that the defendant, if liable at all, was liable only for nominal damages, in not making seasonable return of the execution ; and that, in any event, the sum found in damage was erroneous, as the case disclosed various circumstances that should go to lessen the amount for which verdict was taken.

The plaintiff, also, has settled and adjusted his claim on the execution with the judgment debtors, which should terminate all rightful claim against any one.

*Edes*, (with whom was *Handerson*) for the plaintiff, contended, 1. That there had been such negligence on the part of the officer in the service of process, as to render him liable for damage.

The real estate of the debtor was held by attachment on mesne process, subject to levy on execution; and this levy was made in so defective a manner by the officer as to operate only on a portion of the estate, leaving the remainder to go back to the debtor, who has since conveyed it, and so much of the security for the plaintiff's claim has thereby become lost. The case finds no excuse for the defective proceedings of the officer; and in the absence of such evidence he is clearly liable for the damage occasioned by his want of due care and diligence in the service of the process.

2. That the discharge executed by the creditor was not such a release of claim under the execution as to prevent a claim of damage against the sheriff.

The creditor did not intend to discharge the execution so as to release the sheriff, and such is not its legal effect. To this point they cited 1 *N. H. Rep.* 279, *Colburn* vs. *Gould ;* 9 *Mass.* 133, *Allen* vs. *Holden ;* 11 *East* 390 ; 3 *Term Rep.* 552 ; 4 *Ditto* 168.

UPHAM, J. This case raises the question as to the general duties of an officer where an execution has been placed in his hands for collection. The command on the officer, in our established form of execution, requires him to attach the goods or estate of the debtor, if any may be found within his precinct, and for want thereof to take the body. He is, also, required to make due return of the execution. This command, independent of any directions from the creditor, imposes the duty on the officer of the exercise of due care and diligence in these several particulars.

Richards *v.* Gilmore.

One portion of the command of the execution is as obligatory as the other. The requirement on the officer to levy upon the goods and estate of the debtor, is as important, and as binding upon him, at least, as that portion of the process requiring its due return to the files of the court ; and yet, it has always been holden that the officer is liable in damages for neglect in not making such return.

But this requirement upon the officer was not designed to be arbitrary in its character, or to impose an unreasonable or improper burthen of responsibility on the officer. The proper service of an execution in the levy upon the goods and estate of the debtor, is often a matter of much doubt and difficulty. In such case it is not in the power of the creditor to impose the risk and responsibility of such service upon the officer. If the discharge of the duty of the officer is not perfectly plain, and free from extra care and risk, the officer can place the responsibility of the service upon the creditor, by requiring specific directions from him as to what property shall be levied upon, and the mode in which service shall be made.

The officer may also claim an indemnity in all cases of risk, arising from attachment or levy upon property, which may expose him to danger or expense on account of conflicting titles to the property. The law, therefore, gives every necessary shield to the officer, in placing it in his power to devolve the entire responsibility of service of process upon the creditor, where, in all cases of doubt and difficulty, it should rest. But this right never was designed to relieve the officer from the general duty of prompt and efficient service of process in those cases where no special directions were required, and where he received the process asking neither aid nor instruction from the creditor.

In such cases he is bound to the exercise of due care and diligence in obeying the commands of the execution, and any default or neglect on his part, by which the creditor is prejudiced in realizing the value of his claim, should be

visited upon the officer. The officer is not holden merely to the return of the process, but to the more substantial requirement of an effective and available service, where it may be made on proper enquiry. The respective rights and responsibilities of the officer and creditor are in this way made to harmonize and consist with each other, so as to form a proper security for each.

In this case, the execution was committed to the officer, with the directions of the creditor to levy the execution upon the property attached on the writ, and on any other estate to be found. The officer suggested no difficulty as to the service; intimated no uncertainty as to what property or estate the debtor might have; and asked no aid from the creditor in specifying the particular mode of levy, or manner of service of the process. He assumed voluntarily the responsibility of proceeding with all due care, diligence and fidelity, in fulfilling the command of the precept under the general directions of the creditor.

If there has been a neglect in the exercise of such care and diligence, in failing properly to enforce the claim of the creditor, the officer in such case is liable for the damage the creditor has sustained from this cause. But the question of the proper care and diligence necessary to exonerate the officer from such liability, can be determined only on a full consideration of the facts.

The levy made by the officer in the present case was upon land, as subject to the condition of mortgage, and the mere equity of redemption was sold, when in fact the debtor was the owner in fee of a portion of the land, which he has since conveyed to another person, so that it is now beyond the reach of process in behalf of the creditor.

If the officer was aware of the true state of the title at the time of the levy; or if he did not exercise due care and diligence in ascertaining how the estate was situated, he has failed in the proper discharge of his duty.

There is no evidence showing with any certainty how

this was. The officer may have exercised all the care and diligence that could be required of him in making the proper enquiry as to the title, and may have been misled without such fault as should impute blame to him, or render him liable for neglect.

It is in evidence that the creditor supposed the debtor possessed a mere equity of redemption in the property attached on mesne process, at the time of the attachment, and until long after the levy. What cause he had, or the officer might have had for this belief, is not shown.

There is evidence that, soon after the attachment upon the writ, the officer was informed by the judgment debtor that a portion of this land was unincumbered by mortgage, and the particular portion of the land so situated was pointed out to him. At this time the officer had no process in his hands—he was not then the agent of the creditor ; and whether the declaration was made under such circumstances as was calculated to arrest his attention, and make a permanent impression on the mind of the officer, or whether it was a mere casual remark, made when he had no particular occasion to devote his attention to it, is uncertain. The disclosure might have been made under such circumstances, or it might, from its character, be so little entitled to confidence, as hardly to attract the attention of the officer at the time, or impress his mind so that he should remember it when subsequently he was called upon to levy upon the goods and estate of the debtor. How this matter was, should be shown ; and whether the officer has been guilty of such neglect, and want of due diligence, as to render him liable for the damage incurred.

In estimating this damage the officer is liable only for the actual damage the creditor has sustained. What the value of the land was which was not levied upon, is not found.

If the execution might still be collected, the damage would be slight ; and so far as any thing has been received upon it by the creditor at any time, it lessens the damage to

this extent.    It appears in this case that the execution has
been released to the debtor by the creditor ; but the release
was not designed as a discharge of the claim against the
officer, and has not such legal operation.    All that the officer
can claim is, that the value of the execution, whatever it
may have been, should be allowed to him, or considered in
estimating the damage sustained by the plaintiff.

To determine this question and the various other ques-
tions arising in the case, the verdict must be set aside, and a

*New trial granted.*