STATE *v.* JOHN BUCHANAN, N. H. JOY, JONATHAN WELCH, BRAD-LEY MORRISON, GEORGE WELCH, JOHN H. DUSTIN AND HOSEA WELCH, 2d.

If one, specially deputed to serve a writ of attachment, be about to make service of the process by attaching thereon, as the property of the defendant, property which belongs to a third person, and in which the defendant has no attachable interest, it will not be lawful for the real owner of the property to resist the making of such attachment.

And if resistance be made to such attachment, the persons resisting will not be allowed, on trial of an indictment against them therefor, to prove, in defence, that the process, upon which the attachment was about being made, was sued out by connivance of the plaintiff and defendant therein and of the officer, and was intended to be used by them for the purpose of placing the property attached, which belonged to one of the respondents, in the hands of insolvent and irresponsible persons, so as to deprive the owner of his property, or fraudulently compel him to pay money in order to regain the possession of it.

INDICTMENT for an assault and battery upon the person of one John D. Whitehill.

On trial evidence was given, upon the part of the prosecution, tending to prove that certain writs of attachment, in favor of Jonathan Darling against one Charles Davis, were put into the hands of the said Whitehill to serve and return,—he being an indifferent person, and specially authorized to serve the said writs by the justice signing the same; that Whitehill entered a store in Groton, formerly occupied by the said Charles Davis, and, by direction of the said Darling, attached the goods in said store as the property of said Davis, and commenced making an inventory thereof,—the respondent Buchanan being present as an assistant; that, after Whitehill

had been so in possession of the store and goods for some hours, the said Buchanan took the key of the store door,—the door being locked,—saying that he took possession, and opened the door, and invited the other respondents to come in; that Whitehill attempted to prevent this proceeding,—but the respondents overpowered him, and forcibly put him out of the store,—using, however, no more force than was necessary for that purpose.

The respondents then offered evidence tending to prove that the said Davis had no interest in the said store, or goods, but that the same were the property of the respondent Joy, and were, at the time of the attachment, and for some time previous had been, in his possession, and that this was well known to all concerned; that the said Davis, Whitehill, Darling and one Eph. Low had previously conspired and agreed together to get the goods in the said store,— amounting, in value, to about $1000,—out of the possession of said Joy, and into the hands of irresponsible persons, for the purpose of defrauding Joy out of the amount, or fraudulently compelling him to pay money to regain the possession of them; that the demands, upon which said writs were predicated, were fraudulent, and were procured in pursuance of said agreement; that all that was done by said Whitehill and Darling was done in pursuance of said agreement; that said Whitehill and Darling were irresponsible,—all which was well known to the said Whitehill; and that Whitehill's possession of the goods was only with the above mentioned fraudulent intent.

The respondents farther offered evidence tending to prove, that, at the time the respondents Buchanan and Morrison entered the store, as above stated, they had in their hands three legal writs of attachment against said Joy,—Buchanan being legally authorized to serve one of said writs, and Morrison being legally authorized to serve the other two, by the magistrate signing the same,—which writs they were directed, by the plaintiffs therein, to serve by attaching the said goods as the property of said Joy,—he having no other visible attachable property; that they entered the said store for the sole purpose of making such attachment, but, on account of the resistance of said Whitehill, were unable to do so without putting him out of the store,—which they did with no unnecessary force,—and that the other respondents acted as their assistants.

State *v.* Buchanan et al.

To the admission of all the testimony, so offered by the respondents, the counsel for the prosecution objected, and the testimony was excluded by the court. The jury returned a verdict against the respondents. Exceptions by respondents.

*T. Howard,* state's attorney.

The respondents are without excuse; and we think that the principles, which must govern this case, have been fully settled, against the respondents, in the reported cases decided in this state. 2 Aik. 415. 6 Vt. 215. 8 Vt. 424. 12 Vt. 435. 13 Vt. 416.

*C. Davis* for respondents.

1. It seems by no means clear, that the case, as made out by the government, without reference to the facts offered in defence, would warrant a verdict of guilty. Had the attachment, commenced on Darling's writ, been made by a regular, known officer, possibly it would. We are aware that it is our well determined, that such officer cannot be rightly opposed by force, in the act of taking the property of one man to answer the claim of another. *State* v. *Downer et al.,* 8 Vt. 424. *Merritt* v. *Miller,* 13 Vt. 416. As limited and understood in those cases, this doctrine is indispensable to the preservation of the proper powers of such officers, in the service of process, and to the conservation of the public peace. But private individuals, specially deputed to serve process, are not invested with any such immunity. They have no powers, beyond those conferred by the process in their hands, which are to take the persons, or property, of the individuals named in the process. In doing this they are protected by law, though not to the same extent with known officers. Resistance to the latter is punished severely by statute; resistance to the former, when acting within the scope of the authority conferred upon them, is punishable, not in pursuance of any statute, but by the principles of the common law, which protects every man in the rightful exercise of every duty, or privilege. If such defeated person transcends his authority, and attempts to seize the persons, or property, of those against whom he holds no precept, he is left in the same predicament with any private individual, who does the same acts.

It follows, necessarily, that it should be made to appear that this

was in fact the property of Davis,—or, at all events, that it was not the property of the respondents, or either of them, in defence of which from the forcible acts of trespassers they had the right to interpose. This point is left without evidence either way.

2. Was the act, for which the respondents were indicted, a *recaption*, or simple *defence*? The distinction may be important, not only in reference to the view of the case now under consideration, but to that first taken. It is manifest, that Whitehill had acquired no exclusive possession of the goods; he had removed none of them,—he had only commenced taking an inventory; it does not appear that he had taken possession of the key of the door, or that he had locked it, so as to exclude the owner, or his customers who resorted there to trade. The line of distinction between a case in which a party may lawfully resist intrusion upon his rights of property, and the case when, being fully dispossessed, he cannot assert his rights forcibly, but is driven to his action at law, may not always be of easy discrimination. To reduce it to the latter alternative, it must appear distinctly that the true owner is clearly dispossessed, so that, to repossess himself, it would be necessary to commit a breach of the peace. If he can repossess himself without such necessity, even by going on to the premises of the possessor, though expressly forbidden, and though the adverse possession may have continued for a whole year, he may do so. *Richardson* v. *Anthony*, 12 Vt. 273. *Chapman* v. *Thumblethorp*, Cro. Eliz. 329. Ham. N. P. 153.

3. Farther, the respondents offered to prove, on trial, that the proceedings of Whitehill and his employer, Darling, in making a pretended attachment, were the result of a conspiracy, in which Davis, the pretended debtor, participated,—the object of which was to wrest the possession of those goods from Joy, the *owner*, and defraud him out of them; that the supposed debt from Davis to Darling was fictitious; that all the proceedings under the writ were simulated, and done with the view of better effecting the fraudulent purpose aforesaid, and that Whitehill was fully cognizant of all these matters and a willing agent in the accomplishment of the object. This presents a strong case, undeniably,—little less so, indeed, than if the attempt to dispoil Joy of his property had been made by burglars and robbers.

I cannot conceive that any other answer can be given to this

State *v.* Buchanan et al.

offer, than that they had successfully accomplished the dishonest and fraudulent purpose they contemplated, and the despoiled are bereft of any remedy, except an action at law, against persons perhaps altogether irresponsible. We think they had not fully accomplished their object,—they were surprised *flagrante delicto.*

The opinion of the court was delivered by

REDFIELD, J. The question how far an officer, about to make an attachment of personal property upon process against one having in fact no attachable interest in the same, may lawfully be resisted by the real owner of the property has been settled in this state by repeated decisions; *State* v. *Downer et al.,* 8 Vt. 424; *State* v. *Miller,* 12 Vt. 37; and the same doctrine distinctly recognized in the case of *Merritt* v. *Miller,* 13 Vt. 416. From these cases it being fully determined that such resistance against the attachment is unlawful, it must follow that a recapture of the property, after an attachment, would be equally unlawful, inasmuch as the recapture would necessarily include resistance to the officer, if done forcibly, as much as the greater includes the less in mathematics.

2. It is impossible to make any sound distinction between a specially appointed officer and a known public officer, as to the right to make or to continue an attachment,—inasmuch as the statute, in terms, puts their powers, in this respect, upon the same foundation. It enacts, "that the person so authorized shall have *all the power of the sheriff,* in the service and return of such process." And if any such distinction could be maintained, there is manifestly no ground for it in the present case, as both officers were thus specially appointed;—they would of course be equal to each other, and, being by statute both equal to the sheriff, would have the same right to make, or continue, the attachment. It having been decided that the statute against impeding civil officers only extends to public officers will not affect this question, as it rests upon the construction of the words of the statute.

3. The remaining ground of defence, offered at the trial, consisted in a collateral impeachment of the processes in the hands of Whitehill. They were regular in form, and a full justification, to the extent of the authority apparent upon their face, until set aside by some proceeding brought to operate directly upon them. This

73

State *v.* Buchanan et al.

is a universal principle in regard to processes, judgments, and all proceedings in courts of justice; they are not allowed to be attacked in this collateral manner. If this could be done, a simple trial for assault and battery would branch out into an indefinite number of collateral issues, which would render such trials almost interminable.

Judgment that the respondents take nothing upon their exceptions, and that each pay a fine of ten dollars and costs of prosecution.