## The State *v.* Fifield.

An indictment for obstructing an officer in the service of process need not describe the particular manner in which the offence was committed, nor describe the specific act of the defendant. It is sufficient if it describe the offence substantially in the language of the statute.

An averment that the officer was engaged in the service of the writ described, involves the fact that the writ was in his hands for the purpose of being served.

It is not necessary to allege that the writ had been returned.

The indictment, having set out the writ, averred as follows: "Which writ is duly indorsed," &c;—*Held*, that this averment was descriptive of the writ which was in the officer's hands for service, and is equivalent to an averment that it was then indorsed.

In an indictment for obstructing an officer in the service of process, evidence that the goods, in the attachment of which the obstruction was interposed, belonged to the defendant, and not to the party to the process, is not admissible.

Indictment, charging that the defendant, at the time and place named, &c., "with force and arms did wilfully obstruct one Joseph Powers, he, the said Joseph Powers, then and there being a deputy sheriff," &c., "and then and there being in the due service of a writ of attachment, as he was therein commanded, the same being lawful process in a civil case." The indictment then sets out the writ, and proceeds, "which writ is duly indorsed according to law, by having the name of Lewis Smith, the plaintiff," &c., "indorsed in writing," &c.

At the trial the defendant excepted to the indictment for the following causes:

1. That it sets forth no offence within the terms of the statute.

2. That it does not set forth and describe the offence charged with sufficient form, certainty, and distinctness. It does not state what the defendant did, or how he obstructed the officer, specifically, as it should do.

State *v.* Fifield.

3. There is no allegation that the writ mentioned was ever in the hands of the officer.

4. It states that the writ is now indorsed, but does not state that it was indorsed at the time the offence is alleged to have been committed.

5. It alleges no return of the writ.

It appeared that the act complained of, was obstructing the sheriff in the removal of certain personal property, which he had attached as the property of one Page, and which was lying at the mill occupied by Page. The defendant offered to show, in his defence, that the property was his own, having been previously assigned to him by Page ; and that he used no more force than was necessary to retain the property in his own possession, and to prevent the officer from taking it away.

The court ruled that this would constitute no defence, and overruled the several exceptions taken to the indictment, and the defendant excepted.

A verdict of guilty was rendered by the jury against the defendant, who moved to set the same aside, and for a new trial, on account of the supposed error of the court in the rulings.

*Hibbard*, for the defendant. The indictment, containing the phraseology of the statute, is not sufficient. The property was Fifield's, and he had the right to use as much force as was necessary to retain possession of it. *Commonwealth* v. *Kennard*, 8 Pick. 133 ; 12 Vt. 437.

*Sargeant*, Solicitor, for the State. We are not bound to prove any particular act, but may prove any act that amounts to an obstruction.

As to the indorsement, we proved all that was alleged, but did not allege all that was true.

It is found that the officer acted in good faith. He first attached the property ; after this the resistance occurred. He cited 8 Vt. 424 ; 12 Vt. 478.

State *v.* Fifield.

Woods, J. The first exception to the indictment is, that it sets forth no offence within the terms of the statute. The statute is, " If any person shall wilfully assault or obstruct any officer," &c., " in the service of any lawful process or order in any civil case," " he shall be punished;" &c.

The indictment charges the defendant with having wilfully obstructed Joseph Powers, a deputy sheriff, in the service of a writ, which is set out, and averred to be lawful process in a civil case. The indictment follows the words of the statute, and seems to bring the offence very clearly within its terms.

The third exception is, that there is no allegation that the writ was ever in the hands of the officer; but all that is clearly implied by the allegation, that he was in the act of serving it; for this he could not otherwise do.

If it is necessary to the validity of a writ, as a justification of an officer, or to enable him to serve it, that it should be indorsed, it seems to be sufficiently alleged that it was so indorsed. The allegation of the indorsement is a part of the description of the writ which the officer was serving.

The officer need not allege the return of the writ, for the offence is necessarily committed before the return day ; and it does not appear necessary to wait for the return day before the indictment can be found.

The second exception is, that the indictment does not describe the offence ; that it omits to state what the defendant did, and how he obstructed the officer; but we think that all is stated that is required.

The case of *The United States* v. *Batchelder*, 2 Gallis. 15, was an indictment under the act of Congress of 1799, ch. 128, sec. 71, providing a penalty against any one who shall forcibly resist, prevent, or impede any officer of the customs in the execution of their duty. It alleged that the defendant " did, with force and arms, violently and

State *v.* Fifield.

unlawfully resist, prevent and impede N. J. in the execution of his office, as an officer of the customs," and was held sufficient.   The court say, " It is not necessary, in indictments for obstructing public officers, to set forth the particular exercise of office in which they were engaged, or the particular act and circumstance of obstruction.   These are properly matters of evidence."

In Archbold's Cr. Pl. 442, there is a precedent of an indictment, alleging the resistance in the words of the act to punish for obstructing officers of the customs in the discharge of their duty.

The last exception to be considered is that which was taken to the exclusion of the evidence offered by the defendant, to prove that the goods were his own, and not the goods of Page, against whom the process ran, and whose property it required the officer to take.

The good faith and lawful purpose of the officer, in seizing the goods in controversy, are implied in the verdict, which establishes the fact that he was resisted in the service of the process ; so that the question presented is, whether an officer, who, in the service of a process against one, and intending to serve it, attempts to take property which belongs to another, may lawfully be resisted by the latter, with such force as shall suffice to enable him to retain possession of his own.

That the owner of goods which are in his actual possession, may lawfully defend his possession of them against an officer who comes to attach them on a precept against another person, who has no interest in them, was distinctly affirmed by the supreme court of Massachusetts, in a case having many of the essential features of the present.   The reasoning of the court in substance is, that the officer would, in such case, be clearly a trespasser, for he does not act under a precept requiring him to take such goods ; and that actions of trespass, for such transgressions, depend upon the same principles as actions for false

imprisonment, for one who is arrested on a warrant or writ against another person. In such case there is no authority for the arrest, and the party making it, whether by mistake or design, is a mere trespasser ; and the same facts which would sustain an action of trespass, by the person arrested, will justify any resistance which may be necessary to defend his personal liberty, short of injurious violence to the officer. *Commonwealth* v. *Kennard,* 8 Pick. 133.

But this doctrine has been controverted, and its opposite asserted by the supreme court in Vermont. *State* v. *Downer,* 8 Vt. 424. Mr. Justice *Redfield,* in delivering the opinion of the court, exposes some of the obvious inconveniences that would attend the practical operation of such a doctrine as that of *Commonwealth* v. *Kennard,* and, in a supposed case of collision between the officer, with posse, and the existing parties, remarks, that the question as to which shall be held liable to indictment may depend upon the decision of some abstract question of property, which the sagacity of no man can foresee. " And if the owner of property may resist an officer in its defence, so may one who believes himself the owner; for it will not do to predicate crime upon so subtle a distinction as an abstract right of property." The learned judge distinguishes the case from that of an illegal arrest of one person upon a process against another, in which he admits that the officer attempting to make the arrest may lawfully be resisted. " But," he says, " the case of property is very different. It depends upon *criteria* which are not the objects of sense."

The learned judge also adverts to the consideration, that it is the duty of the officer to attach property whenever requested to do so, as creating a wide distinction between his act and the gratuitous trespass of a stranger, without pretence of process. The officer, while, on the one hand, he has the right to require indemnity from the

creditor, is, on the other, required, at his peril, with respect to the civil consequences, to make the seizure upon the offer of the indemnity. *Richards* v. *Gilmore*, 11 N. H. Rep. 493. If such be his duty, it would be a strange solecism, if the power existed any where, of resisting the performance of it by force.

It is no answer to say that his duty does not require him, upon any indemnity, to take the property of a stranger to the process. It is this power of requiring the officer to proceed upon an indemnity in doubtful cases, that furnishes the creditor with the only efficient and valuable means of testing the question of property; and the only means by which the process can be made of any avail to him, in a variety of cases, it is easy to suppose. For, as was said by the judge who has been named, " if the owner of property may resist an officer in its defence, so may one who believes himself to be the owner;" and thus the property, rescued by violence from legal process, may be lost to the creditor, and the authors of the violence be protected. Even if, contrary to the suggestion in the opinion quoted, crime could not be imputed upon a distinction so subtle as those which often determine questions of property, conviction would be of no avail to the creditor.

The obvious tendency of the doctrine for which the defendant contends, to promote disturbances of the peace by emboldening parties, otherwise sufficiently disposed to be strenuous in cases of doubt, and to appreciate, in such cases, the benefits of actual possession and present use of the disputed goods, suffices, of itself, to awaken the gravest doubt of its soundness.

It is true that the owner of goods in possession of them may, in general, resist a trespass designed to take them from his possession. It is also true, that the seizure of the goods of one person upon the process against another, is technically a trespass, for which the law has provided

the same remedy as for wanton aggression of a stranger without color or excuse. But it does not necessarily follow that the two acts may not be distinguished in the particular under consideration. For one, preventive force is the only protection ; for the other, the law has provided remedies so perfect as to take away all excuse and all strong necessity or temptation for the exertion of such force.

Indeed, in every aspect in which we have been able to consider this question, we are unable to find those reasons for doubting, which the conflict of high authorities might induce us to expect, and are decidedly of the opinion that the defence which the defendant offered was rightly rejected at the trial, and that there must be

*Judgment on the verdict.*